■ The People of the State of New York, Respondent, v Keith E. Goodman, Appellant.—Mikoll, J. Appeal from a judgment of the Supreme Court (Monserrate, J.), rendered February 1, 1991 in Broome County, convicting defendant upon his plea of guilty of the crime of murder in the second degree.

Defendant contends on this appeal that his warrantless arrest in California in the home of Glanville Jones was not justified by exigent circumstances and that this initial illegality was unattenuated, requiring suppression of his subsequent confession made after *Miranda* warnings. We disagree. The judgment of conviction should therefore be affirmed.

The police may enter a home without an arrest warrant to arrest the suspect if they have probable cause to believe the suspect has committed a felony and if sufficient exigent circumstances exist *(see, Payton v New York,* 445 US 573; *People v Mealer,* 57 NY2d 214, *cert denied* 460 US 1024; *see also, Dorman v United States,* 435 F2d 385). Both probable cause and exigent circumstances existed here. The police from three states were involved in the development of the case against defendant and his eventual apprehension, New York, Indiana and California. New York police became interested in defendant as a possible suspect in the murder of Harold Williams in the Town of Windsor, in Broome County, when they found a copy of a letter Williams sent to Mary Goodman of Anderson, Indiana, indicating that Williams had retained copies of correspondence between defendant and himself.

More information was developed linking defendant to the New York murder. New York police went to Indiana in early January 1990 to investigate further and learned that defendant was traveling in Indiana in the company of Jon Mead and Tracy Holland, a friend of Mead, in a stolen red Chevrolet Cavalier station wagon with an Indiana license plate. New York police learned from Goodman, defendant's wife, that defendant had told her that Mead shot Williams in his presence. Subsequently, Holland's grandmother, Nina Smith, notified the police on January 13, 1990 that Holland telephoned her in Indiana advising that defendant had shot and wounded Mead. Holland asked Smith to wire her and Mead $400 via Western Union in San Clemente, California, so they could "come home".

New York police contacted the San Clemente police with the information. It was determined that the San Clemente police were to apprehend all or any of the three if and when they appeared with the stolen car at any of two Western Union outlets in San Clemente. The San Clemente police, however, would not question them about the New York homicide. At about 9:00 A.M. on Sunday, January 14, 1990, the San Clemente police observed the red Chevrolet approaching a Western Union office. After Holland left the car the police apprehended Mead, the driver, while he waited for Holland to return to the car. As Holland was leaving the Western Union office she also was arrested. The police also seized a gun Mead told them was under the front seat.*

The San Clemente police then learned from Holland that defendant was about eight miles away in La Guna at Jones' home. Holland told the police that based on what defendant had told her, he would attempt to shoot it out with the police if they tried to arrest him. Mead told the police that defendant was "crazy" and that defendant had stated that he would kill any police officer attempting to arrest him. The San Clemente police had already been advised that defendant was a suspect in a New York homicide and was armed and dangerous. The San Clemente police then, without consultation with New York police, went to Jones' residence in La Guna, watched the house and, when it appeared they could enter it without harm to Jones, they did so and arrested defendant, all without a warrant. Defendant was booked for possession of stolen property at about 1:00 P.M. and held on

---

* It was agreed that defendant had no standing to challenge seizure of the gun found in the admittedly stolen car.

that charge. New York police officers arrived in San Clemente about 11:00 P.M. that night and began to question defendant at about 12:00 A.M. He was given his *Miranda* warnings and made confessions which are the subject of this appeal.

As to probable cause, defendant argues that because he was not seen in the stolen car in California and was eight miles from it when it was seized, the police had no probable cause to arrest him for possession of the stolen car in California. We disagree. There was sufficient information to conclude at the time of his arrest that defendant arrived in California in the stolen car with the others. The police knew the three had traveled across Indiana together in flight from the police in the red Chevrolet and that the three were in California. Two were apprehended with the car. Additionally, police had ample probable cause to believe that defendant was a participant in the New York felony.

The record also demonstrates that there were exigent circumstances justifying the arrest of defendant without a warrant for commission of a felony *(see, Dorman v United States,* 435 F2d 385, *supra; People v Willsey,* 144 AD2d 106, *lv denied* 73 NY2d 985; *see also, People v Torres,* 140 AD2d 564, *lv denied* 72 NY2d 925). The police had a duty to protect the public and apprehend defendant at the first opportunity inasmuch as they had credible information that he was armed, likely to shoot at the police and likely to harm Jones as well. Defendant had fled Anderson, Indiana, with Holland and Mead in the stolen red Chevrolet after learning that the New York police were investigating him in relation to the Williams homicide. If defendant had become aware or even suspected that Holland and Mead had been arrested, Jones could have been taken hostage to assist in his escape *(see, People v Torres, supra).*

We reject defendant's argument that his arrest was illegal in violation of *Payton v New York* (445 US 573, *supra)* and that such illegality tainted the subsequent confessions given by him. As we have already noted, we do not find defendant's arrest to be illegal. Assuming arguendo, that it was illegal, there was a sufficient interval in time, space and circumstances to purge the illegality *(see, People v Harris,* 77 NY2d 434; *People v Conyers,* 68 NY2d 982; *People v Johnson,* 66 NY2d 398). There was no causal connection between defendant's arrest and his confessions. The charge for which he was arrested, possession of the stolen vehicle, a felony, and the murder in New York, to which he confessed, are unrelated. Moreover, almost 12 hours expired from the time he was

placed in his cell and the time he was questioned. He was left alone during this time. Prior to the questioning he was advised of his *Miranda* rights and waived these rights. There is no reason to exclude the confessions under *People v Harris (supra)*.

Finally, we find that defendant's argument, that the police violated his constitutional rights by delaying his indictment until after he could be questioned in violation of his right to counsel under New York law *(see, People v Kazmarick,* 52 NY2d 322), unpersuasive in view of the facts of this case.

Weiss, P. J., Mercure and Crew III, JJ., concur. Ordered that the judgment is affirmed.