■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM HERNER, Appellant. [623 NYS2d 674] —Judgment unanimously affirmed. Memorandum: Defendant was convicted in the shooting death of two men during a robbery outside a bar in the City of Rochester and the serious wounding of a third man, who survived and identified defendant as the killer.

Defendant was also convicted of separate armed robberies of an A-Plus Mini-Mart and CVS Pharmacy in the City of Rochester, as well as criminal trespass and menacing at a Wegman's Supermarket. The police, who had probable cause to arrest defendant on another robbery charge, entered the detached garage at the house of defendant's mother, where defendant had been living, and arrested him without a warrant. Defendant was taken to the police station where he was advised of his *Miranda* rights and gave statements admitting his involvement in the robberies and double homicide.

Defendant made a motion to suppress his statements to the police on the ground that he was arrested in his "home" without a warrant, in violation of *Payton v New York* (445 US 573). Testimony at the suppression hearing established that defendant had been living and sleeping on a couch in the garage for several months prior to his arrest, with the knowledge and acquiescence of his mother and stepfather. It further established that the police observed defendant sleeping in the garage and arrested him there without a warrant.

In denying the motion to suppress defendant's statements, the suppression court concluded that the garage where defendant was staying did not constitute a "home" protected by *Payton*. The court also found that, even if there had been a *Payton* violation, defendant's statements were sufficiently attenuated from the violation that suppression was not required.

Defendant contends that the suppression court erred in failing to suppress evidence obtained as a result of the warrantless arrest. He maintains that the garage where he was arrested was his "home", that he was entitled to a reasonable expectation of privacy, and that the evidence was not sufficiently attenuated from the violation to avoid suppression.

Rochester Police obtained information connecting defendant to a robbery of Sal's Birdland. A computer records check revealed that defendant's last known address was the home of defendant's mother. A police officer was informed by defendant's mother that defendant did not reside in the house but that he stayed in her garage. The police went to the garage at approximately 6:20 A.M., observed defendant sleeping on the couch, entered the garage and arrested him.

We conclude that the garage was defendant's "home" in the context of Payton *(see, Commonwealth v Gordon,* 433 Pa Super 157, 165-166, 640 A2d 422, 426). Thus, the warrantless arrest of defendant inside the garage was unlawful. However, while a *Payton* violation did occur, we agree with the suppression

court that defendant's statements were sufficiently attenuated from the violation that they need not be suppressed. In determining whether a statement obtained after a *Payton* violation is admissible, it is necessary to consider three factors: (1) the time interval between the illegal arrest and the statement; (2) the presence or absence of intervening factors; and (3) the purpose and flagrancy of the official misconduct *(People v Harris,* 77 NY2d 434, 440-441).

Defendant was arrested at 6:20 A.M. He was transported to the Public Safety Building and was given his *Miranda* rights. Questioning began at approximately 8:05 A.M. Defendant denied participation in any crimes, but began gradually to confess involvement over the next hour and made three depositions between 9:25 and 11:00 A.M. At approximately 11:35 A.M., after being confronted with fingerprint evidence, defendant admitted to robbing the CVS store. After confessing to the CVS robbery, defendant made the impromptu statement: "I didn't shoot anybody", three times. Therefore, defendant's statements did not begin until approximately two hours after the arrest and after *Miranda* warnings had been given. Defendant did not indicate his possible involvement in the shootings for approximately three hours after questioning began. In our view, the time interval was sufficient to avoid suppression *(see, People v Matos,* 93 AD2d 772).

The second prong of the test for attenuation is the presence of significant intervening circumstances between the arrest and statement. Defendant was advised of his *Miranda* rights prior to questioning *(see, People v Goodman,* 183 AD2d 957, 959-960, *lv denied* 80 NY2d 831), but that fact, standing alone, does not attenuate the link between the unlawful arrest and the statement *(see, People v Harris, supra).* Here, however, prior to questioning him, the police advised defendant that he had been implicated in the murders and robberies by Brian Morton. Thus, defendant was confronted with incriminating evidence independently obtained, and that intervening event was sufficient to break the causal chain between the illegality and defendant's statements *(see, People v Harris, supra; People v Green,* 134 AD2d 865, 866, *lv denied* 71 NY2d 897; *People v Matos, supra).*

Finally, with respect to the flagrancy of the police misconduct, under the circumstances of this case, the police could have reasonably, although erroneously, concluded that the garage was not defendant's "home" for purposes of determining whether a warrant for defendant's arrest was needed. Therefore, upon consideration of all the factors, we conclude

that defendant's statements to the police were sufficiently attenuated from the illegality of the arrest and were admissible in evidence at trial *(see, People v Conyers,* 68 NY2d 982; *People v Green, supra).*

There is no merit to the contention of defendant that the court erred in denying his motion for a mistrial based upon the fact that the victim of the shooting had viewed defendant on television approximately one year before the trial and the People had not served notice of that identification pursuant to CPL 710.30. The notice requirement of CPL 710.30 applies only to situations where the identification is arranged by the police *(People v Dobbs,* 194 AD2d 996, 997, *lv denied* 82 NY2d 805). Where, as here, the witness identified the defendant by a chance viewing, CPL 710.30 does not apply *(see, People v Green,* 149 AD2d 919, 920, *lv denied* 74 NY2d 810).

The court properly concluded that the People had established good cause for filing a late notice of intent to offer evidence of statements made by defendant to a jail deputy *(see,* CPL 710.30 [2]; *People v Riley-James,* 168 AD2d 740, 741, *lv denied* 77 NY2d 966). Also, the court acted within its discretion in limiting the scope of cross-examination of a police officer at the pretrial suppression hearing *(see, People v Sorge,* 301 NY 198, 202; *People v Paz,* 159 AD2d 987, 988, *lv denied* 76 NY2d 793, 77 NY2d 842). (Appeal from Judgment of Supreme Court, Monroe County, Wesley, J.—Murder, 2nd Degree.) Present—Green, J. P., Balio, Fallon, Callahan and Boehm, JJ. *[See,* 156 Misc 2d 735.]