91 N.Y.2d 146 (1997)
690 N.E.2d 854
667 N.Y.S.2d 970
The People of the State of New York, Appellant,
v.
Francis J. Burdo, Respondent.
Court of Appeals of the State of New York.
Argued September 17, 1997
Decided October 30, 1997.
Penelope D. Clute, District Attorney of Clinton County, Plattsburgh, for appellant.
MaryAnne Bukolt, Plattsburgh, for respondent.
Jonathan E. Gradess, Albany, and Alfred O'Connor for New York State Defenders Association, amicus curiae.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Anne C. Feigus and Roseann B. MacKechnie of counsel), for New York State District Attorneys' Association, amicus curiae.
Chief Judge KAYE and Judges TITONE, BELLACOSA, LEVINE and CIPARICK concur with Judge SMITH; Judge WESLEY dissents and votes to reverse in a separate opinion.
*148 SMITH, J.
Applying the principle enunciated in People v Rogers (48 N.Y.2d 167), we conclude that under the circumstances of this case, the custodial interrogation was improper and defendant's statements made during questioning must be suppressed. The order of the Appellate Division should therefore be affirmed.
Defendant was incarcerated in the Clinton County jail after his arrest and arraignment on rape charges. Defendant was also being held on an unrelated probation violation, for which he was arrested and detained prior to the rape arrest. On December 12, 1994, police investigators went to the jail to question defendant concerning the June 1993 disappearance and death of Leo Gebo.
The officers met with defendant in the library of the jail where he was advised of his Miranda rights. Defendant stated that he understood his rights and was willing to speak to the officers. One investigator specifically asked if defendant wanted to speak to an attorney but he declined. Defendant was also informed that he could terminate the interview at any time, and that the officers were aware that he was represented by counsel for the pending rape charge. It was agreed that the officers would not question defendant about the pending charges for which defendant was incarcerated.
Defendant was told that a relative had given a statement regarding defendant's involvement in the murder of Leo Gebo. Defendant denied that his relative had participated in the murder and instead admitted that he, defendant, had been "high on pot and booze" when the murder occurred. Defendant stated that his relative had tried to stop him from killing Gebo. When an investigator suggested that another party might have been involved, defendant looked "puzzled," then rose and left the room.
Approximately 15 minutes later, the investigators asked whether defendant would come out of his cell and continue the conversation. Defendant agreed and rejoined the investigators in the library to resume the interview. For about one hour, defendant detailed his involvement in the kidnap, robbery and murder of Gebo. After describing his activities in the murder, defendant agreed to sign a written statement regarding the incident. After the statement was completed, it was given to defendant who read and signed it. Defendant's Miranda rights were printed at the beginning of the statement. Defendant initialed each right and the waiver clause.
*149 Prior to trial, County Court held a Huntley hearing to determine the validity of defendant's confession (see, People v Huntley, 15 N.Y.2d 72). The court noted that defendant was in custody on an unrelated charge for which he was represented by counsel. The court further noted that the officers who questioned him knew that defendant was represented by counsel on that charge. County Court found People v Rogers (48 N.Y.2d 167, supra) to be controlling and held that defendant could not waive his Miranda rights under the circumstances. In so holding, the court suppressed the oral and written statements made by defendant pursuant to the invalid waiver of his rights. The Appellate Division affirmed the order of County Court and a Judge of this Court granted leave to appeal. We affirm.
The holding of People v Rogers is clear. There we held that "once an attorney has entered the proceeding, thereby signifying that the police should cease questioning, a defendant in custody may not be further interrogated in the absence of counsel" (People v Rogers, 48 N.Y.2d 167, 169, supra). In People v Bing, we adhered to our holding in Rogers saying:
"Our holding [in Rogers] * * * emphasized that since defendant was represented on the charge on which he was held in custody, he could not be interrogated in the absence of counsel on any matter, whether related or unrelated to the subject of the representation" (People v Bing, 76 N.Y.2d 331, 340 [emphasis added]).
Last year, this Court unanimously reaffirmed its commitment to the holding and principle enunciated in Rogers:
"Importantly, Rogers establishes and still stands for the important protection and principle that once a defendant in custody on a particular matter is represented by or requests counsel, custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease" (People v Steward, 88 N.Y.2d 496, 501 [emphasis added]; see also, People v West, 81 N.Y.2d 370, 377-378).
Our holding in Rogers was grounded in the New York State Constitution and predicated on several important policy considerations which resonate to this day. As this Court stated:
"Our acknowledgment of an accused's right to the *150 presence of counsel, even when the interrogation concerns unrelated matters, represents no great quantitative change in the protection we have extended to the individual as a shield against the awesome and sometimes coercive force of the State * * * [T]he attorney's presence serves to equalize the positions of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming. That the rule diminishes the likelihood of a waiver or self incriminating statements is immaterial to our system of justice" (People v Rogers, 48 N.Y.2d 167, 173, supra).
Notwithstanding the fact that defendant's statements might pertain to a matter unrelated to the formal representation on a pending charge upon which defendant was in custody, suppression is mandated under Rogers which, in the absence of a counseled waiver, bars further custodial interrogation of a suspect "on any matter" (People v Bing, 76 NY2d, at 340).
Rogers clearly applies to the instant case. Defendant was in custody at the Clinton County jail pursuant to a pending charge of rape and assault.[*] It is also conceded that defendant had been assigned legal representation following his arraignment and subsequent incarceration on a pending charge. The officers who questioned defendant were fully aware of these facts and proceeded to interrogate the defendant anyway. Under a plain reading of Rogers, the State was prohibited from questioning him under these circumstances.
The People, and the dissent, urge this Court to confine the rule in Rogers only to circumstances when an attorney, in some active fashion, interjects herself into the proceedings and signifies that the police should cease questioning. Under such circumstances, they would condone custodial interrogation on unrelated matters in the absence of an explicit or active invocation of the right to counsel by either defendant or his assigned counsel. That is not Rogers' holding and teaching and we decline to so limit its reach.
Finally, we underscore that our decision neither expands nor narrows Rogers, which established the principle that a defendant *151 represented by counsel on the charge on which he is held in custody cannot be interrogated in the absence of counsel "on any matter." For nearly two decades Rogers has stood as a workable, comprehensible, bright line rule, providing effective guidance to law enforcement while ensuring that it is defendant's attorney, not the police, who determines which matters are related and unrelated to the subject of the representation. We reject the proposal put forth by the dissent to now modify Rogers to "an actual attorney-client relationship or an invocation of his right to counsel" (dissenting opn, at 160). The dissent's proposal both upsets the careful balance of interests maintained by Rogers and introduces its own new ambiguities where clarity and certainty are important for the individual as well as the public interest involved.
Accordingly, the order of the Appellate Division should be affirmed.
WESLEY, J. (dissenting).
Because I believe the majority expands the scope of People v Rogers (48 N.Y.2d 167) and a defendant's right to counsel arising from the commencement of a criminal proceeding, I respectfully dissent. In my view, defendant must establish an actual attorney-client relationship or an invocation of his right to counsel under the Fifth Amendment of the United States Constitution and article I, § 6 of our State Constitution before the protection of Rogers becomes available. From my view of the record, defendant failed to establish either.

I.
Under our constitutional jurisprudence, the right to counsel arises from two significantly different scenarios: (1) upon the commencement of formal proceedings, and (2) when an uncharged individual has actually retained a lawyer, or while in custody has requested a lawyer (People v West, 81 N.Y.2d 370, 373). The first parallels to some degree the right to counsel arising under the Sixth Amendment to the United States Constitution, which also attaches with the commencement of formal proceedings (Kirby v Illinois, 406 US 682). That right under our law is broader, however, in several respects. For example, it attaches whenever there is significant judicial activity, such as the filing of a felony complaint to obtain an arrest warrant (see, People v Harris, 77 N.Y.2d 434, 440; People v Samuels, 49 N.Y.2d 218, 221), and it can attach if arraignment is unduly delayed (see, People v Hopkins, 58 N.Y.2d 1079, 1081). *152 It has come to be associated with the line of cases beginning with People v Di Biasi (7 N.Y.2d 544) (see, People v West, supra). The fact that a suspect has counsel solely because of the commencement of formal proceedings in one matter, however, does not preclude police from interrogating the suspect about unrelated matters in the absence of counsel (People v Kazmarick, 52 N.Y.2d 322; People v Herner, 156 Misc 2d 735, 746-747, affd 212 AD2d 1042, lv denied 85 N.Y.2d 974).
The second manner in which New York's right to counsel can attach, when an uncharged individual has actually retained a lawyer, or while in custody has requested a lawyer, originated in the context of custodial interrogation (People v West, supra, 81 NY2d, at 374). Like the privilege against self-incrimination under the Fifth Amendment to the United States Constitution, it is intended to "`"preserv[e] the integrity of an accused's choice to communicate with police only through counsel"'" (People v Claudio, 83 N.Y.2d 76, 81, rearg dismissed 88 N.Y.2d 1007; see also, People v Kazmarick, supra, 52 NY2d, at 327). Nevertheless, because this right to counsel can arise when an individual has actually retained a lawyer, it cannot be said to arise under the privilege against self-incrimination alone; instead, we have said that this right is rooted in "the privilege against self incrimination, the right to be aided by counsel and due process" (People v Skinner, 52 N.Y.2d 24, 28; see also, People v Cunningham, 49 N.Y.2d 203, 207; People v Arthur, 22 N.Y.2d 325, 328; People v Donovan, 13 N.Y.2d 148, 151).
New York has extended this right independently of the Supreme Court's analysis of its Fifth Amendment counterpart. We have held that, once the privilege against self-incrimination has been invoked, a suspect cannot be interrogated even in a noncustodial setting (People v Skinner, supra), and that, once invoked, a suspect cannot waive the privilege in the absence of counsel (People v Cunningham, supra). This right has come to be associated with cases such as People v Hobson (39 N.Y.2d 479; see, People v West, supra, at 374).
The question of whether this particular right to counsel protects a suspect held in custody on one matter from being interrogated about other unrelated matters has repeatedly drawn our attention. In People v Taylor (27 N.Y.2d 327, 330-332), we held that a suspect held in police custody and represented by counsel on one matter could be questioned about unrelated matters in which the suspect was not represented by counsel (see also, People v Hobson, supra, 39 NY2d, at 483). We limited this rule in People v Ermo (47 N.Y.2d 863), *153 when we precluded the police from exploiting impermissible questioning about a matter in which a suspect was represented by counsel to obtain statements from the suspect about other unrelated matters in which the suspect was not represented.
We further limited Taylor in Rogers (People v Rogers, supra, 48 NY2d, at 173). In Rogers, the defendant had advised the police that he had an attorney, but that he was willing to speak to the police in the attorney's absence. After the attorney contacted the police and instructed them to cease questioning, the police asked no further questions about the robbery for which the defendant had been arrested, but continued to question him about unrelated activities. After six hours of interrogation, during which defendant was manacled to furniture, defendant made an inculpatory statement concerning the charge on which he had counsel. We held that, once an attorney had "entered the proceeding" (id., at 169), the police could not elicit from the defendant any statements except those necessary for processing or his physical needs, nor could they seek a waiver of the right to counsel except in the presence of counsel (see, People v Bing, 76 N.Y.2d 331, 349, rearg denied sub nom. People v Cawley, 76 N.Y.2d 890).
The defendant's right to counsel in Rogers arose from the Hobson category of cases noted earlier. The existence of the attorney-client relationship was interposed as an assertion of the defendant's right not to incriminate himself. The defendant informed the police that he had an attorney, and his attorney directed the police to stop questioning his client.
It is significant to note that in Bing this Court specifically held that Rogers "modified the Taylor rule" (People v Bing, supra, 76 NY2d, at 340 [emphasis added]). The Court recognized that the Taylor rule remained viable and that Rogers was directed at limiting the police "from exploiting custody on the crime on which Rogers had counsel." (Id., at 340.) "Under such circumstances, the Taylor rule necessarily gave way to insure that questioning stopped and `accidental' interference with the established lawyer-client relationship was avoided" (People v Bing, supra, 76 NY2d, at 340 [emphasis added]).
Thereafter, in People v Bartolomeo (53 N.Y.2d 225), we extended the Rogers rule to hold that the mere pendency of one matter in which the right to counsel had attached prohibited the police from questioning a suspect about other matters, related or unrelated. We soon set about creating exceptions to Bartolomeo, and eventually overruled it in a trilogy of cases under the heading of People v Bing (supra).
*154 The Court emphasized in Bing that it was not retreating from the holding in Rogers (76 NY2d, at 350). In Bing, we distinguished Bartolomeo (supra) from Rogers on the ground that the defendant in Bartolomeo had been taken into custody for questioning on a new, unrelated charge for which he was not represented. "Since the right to counsel is personal and may be waived by a defendant (see, People v Davis, [75 N.Y.2d 517]), the court had to create an indelible right, a right that defendant could not waive in the absence of counsel, to justify suppression of the voluntary statement. It did so by implying a derivative right" (People v Bing, supra, at 350).
The Court noted, however, that in Rogers, "the right to counsel had been invoked on the charges on which defendant was taken into custody and he and his counsel clearly asserted it" (76 NY2d, at 350) (emphasis added). It seems clear to me that the majority in Bing viewed Rogers as a case involving a defendant's right to counsel in a self-incrimination context. Rogers had a lawyer and his lawyer told the police to stop questioning him. The police disregarded that relationship, exploited the custodial charge on which Rogers had counsel, and eventually obtained an incriminating statement on that charge. The foundation of Rogers' "right to counsel" as recognized by the majority in Bing was an actual attorney-client relationship that was invoked to prohibit an interrogation conducted without counsel present. Rogers did not involve a right to counsel arising from the commencement of formal proceedings  a Di Biasi category right (see, People v West, supra, 81 NY2d, at 377 ["if at the time of questioning, the accused is not actually represented in the unrelated matter  for example, if the right to counsel had attached solely because of the commencement of formal proceedings  no Rogers right arises"]). If it had, then the Rogers right to counsel also would have been purely derivative and would have been swept away with Bartolomeo by Bing.
In two of the three Bing cases, the defendants had been taken into custody on charges for which those defendants had counsel and were then questioned on matters that appeared to be unrelated to the custodial charges. In People v Bing, the defendant, who was suspected of a New York burglary, was actually arrested on an Ohio arrest warrant arising out of a burglary in that State for which the defendant was represented by counsel (76 NY2d, at 335). In People v Cawley, the defendant had been arrested on a bench warrant arising out of robbery charges for which he was represented at arraignment by counsel, and gave *155 inculpatory statements about new, unrelated criminal conduct (76 NY2d, at 336). If Rogers were read to mean what the majority now ascribes to it, then the Court in Bing would have been required to overrule Rogers also: Bing and Cawley did have counsel on the charges for which they were in custody (see, People v Bing, supra, 76 NY2d, at 346, 358-359 [dissenting opn as to People v Cawley]).
The Court in Bing recognized this and further recognized that under Bartolomeo the derivative right to counsel had attached to the defendants indelibly. The Court in Bing had to resolve the scope of the protections afforded Cawley and Bing because of their existing attorney-client relationships on the charges for which they were in custody. The Court rejected the position now taken by the majority  that assignment of counsel at arraignment created a right to counsel within the scope of Rogers. "To afford him [Cawley] an indelible right to counsel on the new * * * charges based on the superficial relationship with a lawyer assigned to him for arraignment on the prior charges, presses reason to the limit" (People v Bing, supra, at 347 [emphasis added]). The "superficial" attorney-client relationship on the custodial charge did not preclude the police in Bing and Cawley from seeking valid waivers of their right to counsel prior to questioning on matters unrelated to the charges on which they were held. The majority in Bing clearly recognized that the attorney-client relationship at issue for Mr. Cawley was superficial because of its origin. If that were not so, Rogers would have applied.
Since Bing, we have reiterated that a defendant whose right to counsel has attached solely by virtue of the commencement of formal proceedings in one matter can be interrogated about other unrelated charges in which the suspect is not represented (People v Ruff, 81 N.Y.2d 330; see also, People v West, supra, 81 NY2d, at 377-378). Nevertheless, with respect to the Hobson right to counsel, we held in People v Steward (88 N.Y.2d 496) that "Rogers establishes and still stands for the important protection and principle that once a defendant in custody on a particular matter is represented by or requests counsel, custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease" (88 NY2d, at 501).
This Court in Steward noted the distinction drawn between Bing and Rogers. In Rogers "`the right to counsel had been invoked on the charges on which defendant was taken into custody and he and his counsel clearly asserted it'" (People v Steward, supra, at 502 *156 [emphasis in original], quoting People v Bing, 76 N.Y.2d 331, 350, supra). I agree with this analysis.
The underlying premise of Rogers was that when an individual is held on a charge for which he actually has a lawyer and his lawyer has expressly directed the police to cease questioning the defendant, it would be meaningless to allow the police to honor counsel's request only to the extent it covered areas that the police believed to be related to that charge.
"[I]t is the role of defendant's attorney, not the State, to determine whether a particular matter will or will not touch upon the extant charge. Once a defendant has an attorney as advocate of his rights, the attorney's function cannot be negated by the simple expedient of questioning in his absence." (People v Rogers, supra, at 173.)
The Court in Steward, however, permitted the questioning of the defendant even though an attorney had been assigned to him at his arraignment on misdemeanor charges unrelated to felonies to which he later confessed and the authorities were aware of that assignment. The Appellate Division premised its decision in Steward on the absence of an actual attorney-client relationship (217 AD2d 919). However, this Court focused on the fact that, although defendant did have counsel on the misdemeanors (for which he had not been held in custody), this did not create a derivative right to counsel on the unrelated felonies. I completely agree with this Court's analysis in Steward in this regard.
I part company with the present majority concerning the language in Steward that seems to imply that whenever someone is held in custody on a charge for which they "have counsel", that person cannot be interrogated about unrelated charges. To my mind, that goes beyond Rogers as later limited by Bing and our other cases in this area and is inconsistent with our holdings in People v Kazmarick (supra), and People v West (supra).
In this case, it is conceded by the People that counsel had been assigned on the probation violation and the rape charge, but it is impossible on this record to determine what, if anything, had happened on either matter other than initial arraignments (on the petition and the felony complaint) and assignment of counsel. In his motion to suppress, defendant alleged that while he "was in jail awaiting Grand Jury action" on the rape charge and the violation of probation and after *157 "counsel had been appointed and appeared on each matter", he was impermissibly questioned without counsel present. Nothing more was alleged or proven with regard to the attorney-client relationship on either matter.
Defendant did indicate to one of the police officers the name of his attorney on the rape charge, but never invoked his right to speak to her, nor did his counsel instruct the police officers not to speak to defendant. Defendant was never questioned by either officer about the rape or the underlying incident involving the violation of probation. The hearing court found that the rape charge was wholly unrelated to the murder; no one contests that.[1]
The defendant bears the burden of establishing the existence of an attorney-client relationship (see, People v Rosa, 65 N.Y.2d 380, 387; see also, People v West, supra, 81 NY2d, at 385 [dissenting opn]). On this record, I cannot agree that defendant was actually represented by counsel in a Rogers context. There is no question in this case that the police made no attempt to exploit the custodial charges in derogation of defendant's right to counsel (see, People v Ermo, 47 N.Y.2d 863, supra; see also, People v Cohen, 90 N.Y.2d 632 [decided today]). There is no question in this case that defendant did not invoke his right to counsel in a Fifth Amendment context. Contrary to the majority's conclusion, the record fails to establish anything more than a "superficial relationship with a lawyer assigned to [Burdo] for arraignment on the prior charges" (People v Bing, supra, at 347). The majority diminishes the Court's precedents in this area and confuses one's right to counsel in a specific proceeding with an actual existing attorney-client relationship which serves as the basis for the broader protections offered defendants under New York law by People v Rogers in this area.

II.
I believe that the Bench and Bar will continue to struggle with this Court's prior holdings in this area until we bring into better focus the underlying difference between the right to counsel under the Sixth Amendment and the right to counsel associated with the Fifth Amendment privilege against self-incrimination *158 and the State constitutional corollaries (NY Const, art I, § 6).
In some respects, our holdings do reflect the difference between the two rights. In cases such as Rogers, for example, when a defendant or counsel has invoked the right to counsel during a custodial interrogation on one matter, we have correctly held that this right (which is based on the Fifth Amendment privilege against self-incrimination) precludes police from questioning the defendant on unrelated matters. Similarly, as in Ruff and Kazmarick, when the right to counsel has arisen solely by virtue of the commencement of formal proceedings in one matter (that is, under the Sixth Amendment), we have implicitly recognized that this right is "offense-specific", and have held that police are not precluded from questioning the suspect about unrelated matters.
I do not mean to suggest that either the right to counsel or the privilege against self-incrimination set forth in New York Constitution, article I, § 6 must be limited to the same scope as that of the Sixth and Fifth Amendments to the United States Constitution. As noted earlier, we have provided greater protection under the New York Constitution in both contexts. But we have also recognized in the context of the right to counsel at a lineup that the scope of the right to counsel differs depending upon whether the source of that right is the Fifth or the Sixth Amendment (see, People v Wilson, 89 N.Y.2d 754, 758; People v Hawkins, 55 N.Y.2d 474, 482-483, cert denied 459 US 846). Someday, perhaps we will recognize that the right to counsel at a custodial interrogation is similarly dependent upon whether the source of that right is an offense-specific right to counsel or a more encompassing privilege against self-incrimination.
New York has a rich tradition of ensuring that an individual can be shielded from "the awesome and sometimes coercive force of the State" (People v Rogers, 48 N.Y.2d 167, 173, supra). I am not unmindful of that tradition and its validity. I am also aware of the importance of stare decisis to the legitimacy and stability of this Court (see, People v Bing, supra, 76 NY2d, at 337-338; see also, People v Hobson, supra, 39 NY2d, at 487-491). However, I am deeply concerned about a decision that recognizes that a police officer can question an individual who has been assigned an attorney on one matter, is released, and then taken into custody on another unrelated matter, but a police officer cannot question another individual whose right to counsel appears to have attached by the same process, but who *159 happens to have remained in jail on the original charge. Both are subjected to the "awesome and sometimes coercive force of the State" yet only one gets the benefit of the attorney-client relationship in mitigating that force.

III.
The Supreme Court has distinguished between the right to counsel that arises under the Sixth Amendment and the privilege against self-incrimination, with its attendant right to counsel, that arises under the Fifth Amendment. The purpose of the Sixth Amendment right to counsel is to protect uncounseled individuals at critical confrontations with government, after their adverse positions have solidified with respect to a particular alleged crime (United States v Gouveia, 467 US 180, 189). Once this right has attached or been invoked, it cannot be waived during a police-initiated interview in the absence of counsel (Michigan v Jackson, 475 US 625, 636). But this right is offense-specific: statements regarding other unrelated crimes as to which the Sixth Amendment right has not yet attached remain admissible (Maine v Moulton, 474 US 159, 180, n 16).
By comparison, the right to counsel associated with the Fifth Amendment privilege against self-incrimination is designed to protect suspects who "desire to deal with the police only through counsel" (Edwards v Arizona, 451 US 477, 484). Once the right is asserted, the suspect cannot be approached during custody for further interrogation in the absence of counsel (Edwards v Arizona, supra, 451 US, at 484-485; Minnick v Mississippi, 498 US 146, 150). This right is not offense-specific: once it is invoked with respect to one offense, the suspect cannot be approached without counsel regarding any offense, related or unrelated (Arizona v Roberson, 486 US 675).
The Supreme Court has been careful not to conflate the two rights. In McNeil v Wisconsin (501 US 171), the Court held that the invocation of the Sixth Amendment right to counsel at an arraignment would include the protection of counsel for a custodial interrogation that was part of the same prosecution, but it did not constitute the invocation of the Fifth Amendment right to the protection of counsel for a custodial interrogation on unrelated charges.[2] This line of analysis avoids the danger of erecting a functional derivative right to counsel that we expressly rejected in Bing.

*160 IV.
Applying New York constitutional analysis, because defendant failed to establish an actual attorney-client relationship or an invocation of his right to counsel concerning the murder charge in this case, and because the police carefully respected defendant's right to counsel on the unrelated rape and probation violation charges (cf., People v Cohen, 90 N.Y.2d 632, supra [decided today]; People v Rogers, supra; People v Ermo, supra), I would reverse, deny the motion to suppress, and remit the matter to Clinton County Court for further proceedings on the indictment.
Order affirmed.
NOTES
[*] We reject the People's argument that defendant's "stay" at the Clinton County jail does not constitute "custody" under Rogers. While we have declined to adopt a per se rule that any questioning of an inmate in a correctional facility is "custodial," here, defendant was incarcerated after a lower court arraignment on a charge of rape in the first degree. We conclude that defendant was "in custody" under the circumstances presented.
[1] I also take no exception to the majority's determination that defendant was "in custody". Nevertheless, he was not manacled to a chair for a long time like the defendant in Rogers. Indeed, on one occasion, he got up and left the jail library without interference from the officers.
[2] The Supreme Judicial Court of Massachusetts and most other State courts have chosen to follow the rule that the Sixth Amendment right to counsel is offense-specific (Commonwealth v Rainwater, 425 Mass 540, 681 NE2d 1218).