THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BERNARD HARRIS, Appellant

Sandler, J. P., concurs in a memorandum with which Wallach, J., concurs; Asch, J., concurs in a separate memorandum with which Kassal, J., concurs; and Rosenberger, J., dissents in a memorandum, all as follows:

Sandler, J. P. (concurring).

It may be that the somewhat ambiguous hearing testimony would have supported a factual finding by the hearing court that the defendant was arrested under circumstances that did not violate *Payton v New York* (445 US 573). I am unable to agree, however, that the hearing court's finding that such a violation occurred was erroneous as a matter of law or contrary to the weight of the evidence. Accordingly, the critical issue, in my view, is whether there was an adequate basis for the hearing court's further determination that there had been sufficient attenuation to justify the acceptance into evidence of the defendant's written station house statement given after a renewal of the *Miranda* rights.

Although the issue is a close one, and the dissenting opinion presents a cogent argument to the contrary, I am satisfied that there was an adequate basis for the trial court to conclude that the police station statement was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *(Wong Sun v United States,* 371 US 471, 486.)

Although *Brown v Illinois* (422 US 590) is relevant to the issue presented, I do not agree that it is as clearly determinative of that issue as suggested in the dissenting opinion. There is a difference between the issue presented here and that addressed by the Supreme Court in *Brown* that surely has significance in the balancing process required in determining whether challenged evidence must be suppressed as an exploitation of constitutionally invalid police behavior.

*Brown (supra)* was concerned with a defendant who was arrested without probable cause and who, at the time of his arrest, could not have been arrested anywhere in a manner consistent with constitutional requirements, and as to whom an arrest warrant could not properly have been then issued. Given the fact that there was here probable cause to arrest the defendant, a finding not disputed in the dissenting opin-

ion, we are confronted with an arrest that could have taken place lawfully anywhere except in the defendant's apartment. This major difference in the character of the underlying illegality surely has some relevance in determining whether or not the challenged statement represented an improper exploitation of the underlying illegal act.

Significantly, in *United States v Johnson* (626 F2d 753, 759, *affd* 457 US 537), an important decision understandably relied on in the dissenting opinion, the Ninth Circuit rested its determination to suppress the station house statement on the conclusion that the defendant "[h]aving given one statement which inculpated him in the crime, he had already committed himself; there was little incentive to withhold a repetition of it". In this case, however, the testimony strongly indicates that the defendant was expecting the police to come, was relieved when they arrived at his apartment, and had made a clear prior decision to admit his guilt. Accordingly, there is strong support in the record for the conclusion that the defendant gave his written statement at the station house, not because he felt committed by what he had said at the apartment, but because of a considered decision made prior to the expected arrival of the police.

One other fact distinguishing this case from *Johnson (supra)* should be noted. *Johnson* involved an arrest of a person charged with a nonviolent crime. In this case, the police had substantial reason to believe that they were concerned with a dangerously violent person who had abducted and raped the deceased some four days before he killed her. Although the arrest cannot be justified as having occurred under exigent circumstances in the normal meaning of that term, it seems clear that the police were acting under the pressure of a sense of urgency that the defendant should be taken into custody as soon as possible.

Asch, J. (concurring).

Defendant's contentions that his arrest was not supported by probable cause and that his written confession, which was given after a *Miranda* warning, should have been suppressed are without merit.

Erika Jones, the daughter of murder victim Thelma Staton, reported to the police a conversation she had had with her mother prior to her death. Erika stated that her mother had told her that she had been kidnapped by the defendant, at knifepoint, from the home of her boyfriend, Herbert Stultz, and then raped by defendant four days before the murder. Staton's diary had an entry for that date to the same effect.

Moreover, a friend and co-worker of the victim had informed the police that Staton had told her of the abduction. The police were also told that defendant had installed the lock on Staton's bedroom door. It had been locked from the outside after the crime and only defendant and the murder victim had keys. Staton's boyfriend, Stultz, told the police that a window had been broken in his apartment on the day of the abduction. Staton had refused to disclose the identity of the perpetrator to Stultz, out of concern for his safety. The day before she died, Staton told Stultz she was scared to death of defendant.

With this background of incriminating evidence, the police went to defendant's apartment. Defendant invited them in and told them he was glad they had come for him. After being informed of his *Miranda* rights and told by Detective Rivers that they were there with respect to Staton's death, the defendant poured himself a glass of wine and admitted he had slit her throat with a knife. He was arrested and taken to the station house. As the hearing court found, there was ample probable cause for his arrest. About one hour later, he was again read his *Miranda* rights and he once more gave a statement to Detective Rivers. It was taken down by the officer and signed by defendant. In it, defendant admitted the facts of the crime in detail.

After the *Huntley* hearing, the court found that the police entry into the apartment without a warrant constituted a violation of the holding in *Payton v New York* (445 US 573), and, therefore suppressed the confession given in the apartment. However, because of the passage of time between the first and second confessions and the rereading of the *Miranda* rights, the court found that there was an attenuation which removed the taint of the *Payton* violation. We find, however, based upon the uncontradicted evidence before the court, that the entry of the police into the apartment was legal and not in violation of the dictates of *Payton v New York (supra)*.

The testimony at the hearing was unequivocal that defendant voluntarily admitted the police officers, inviting them in and, in fact, even telling them he was "glad" they had come for him. He also told them, "Have a seat while I fix myself a glass of wine." In *Payton (supra,* at p 576), the United States Supreme Court held that "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment * * * prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest". As

noted, there was clearly consent on defendant's part to the police entry. Defendant's conduct in admitting the police and inviting them to sit down while he had a glass of wine negated any inference of coercion.

Even if the hearing court was correct in its determination that the initial arrest was illegal, the second written confession was not obtained by " 'exploitation of th[e] illegality' " but " 'by means sufficiently distinguishable to be purged of the primary taint' " *(Wong Sun v United States,* 371 US 471, 488; *see also, People v Rogers,* 52 NY2d 527). The hearing court, in any event, found, as we do, that any "taint" resulting from an illegal arrest was removed by the lapse of time between the statements and the rereading of the *Miranda* warnings before defendant made his second confession.

*Brown v Illinois* (422 US 590), cited by the dissent, is inapposite, even assuming the illegality of the arrest. There, the Supreme Court held that the reading of the *Miranda* warnings by themselves would not per se break the causal connection between the illegality and the confession. Also, contrary to the facts of *Brown,* the arrest in this case was not made solely for questioning or investigation. The police had investigated the murder fully and had ample probable cause to arrest defendant at the time that they went to his apartment.

Rosenberger, J. (dissenting).

I dissent and would reverse the judgment appealed from and remand the matter to Supreme Court for a new trial.

Defendant was arrested in his apartment, without a warrant, by police officers who entered the apartment with drawn guns while another officer was at a window on the fire escape. Police officers and detectives had gone to the defendant's apartment. When there was no response to their knocking at the door, one of the officers went down the fire escape to the window of defendant's apartment. That officer was on the fire escape for two or three minutes. He had knocked on the window and said "Police". A detective at the door called out: "Police". The defendant then admitted the detectives at his door, who, as noted, had their guns drawn. (One of the officers, when asked, on cross-examination at the hearing, by the defendant, *pro se:* "Did you have my consent to be in that apartment?", responded "No".)

The police conceded that no attempt had been made to obtain a warrant for the defendant's arrest. It was also conceded that they would have "taken him into custody *(for*

*questioning*" (emphasis added) had he not wanted to talk to them. The defendant made inculpatory statements while in custody in the apartment.

Criminal Term correctly found that the defendant had submitted to police authority in admitting them to his apartment. The court suppressed the statements stating: "No more clear violation of *Peyton [sic]*, in my view, could be established."

The defendant was then taken to the 44th Precinct where *Miranda* warnings were once again read to him and where he signed an inculpatory statement. This statement was made one hour after the unlawful arrest in the defendant's home. Thereafter, the defendant made a videotaped statement to an Assistant District Attorney. When asked by the Assistant District Attorney "Now that I have advised you of your rights, do you want to speak to me about the death of Thelma Staton?" The defendant responded: "Well, I really don't know what to say right now." The court suppressed the videotaped confession, finding no clear waiver of the defendant's right to remain silent. Having suppressed the statement made by the defendant in his apartment and the videotaped statement made by him to the Assistant District Attorney, the court nonetheless refused to suppress the written statement of the defendant finding "sufficient attenuation; the rights were given again." Presented for review on this appeal is this branch of the court's ruling on the motion.

*Brown v Illinois* (422 US 590 [1975]) is instructive on, and in my view determinative of, the issue here involved. In that case, the defendant was arrested at the entrance to his apartment for questioning regarding a homicide. He was taken to the police station where he was informed of his rights under *Miranda v Arizona* (384 US 436). About one hour after the arrest at his apartment he made an inculpatory statement. The Supreme Court of Illinois (56 Ill 2d 312, 317, 307 NE2d 356, 358) found the arrest to be unlawful, but declined to suppress the station house statement, finding that the giving of the *Miranda* warnings "served to break the causal connection between the illegal arrest and the giving of the statements, and that defendant's act in making the statements was 'sufficiently an act of free will to purge the primary taint of the unlawful invasion.' *(Wong Sun v. United States,* 371 US 471, at 486.)" In reversing the Supreme Court of Illinois, Justice Blackmun wrote (422 US, at pp 602-604):

"If *Miranda* warnings, by themselves, were held to attenu-

ate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See *Davis* v. *Mississippi,* 394 U. S. 721, 726-727 (1969). Arrests made without warrant or without probable cause, for questioning or 'investigation' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to a 'form of words.' See *Mapp* v. *Ohio,* 367 U.S., at 648.

"It is entirely possible, of course, as the State here argues, that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. But the *Miranda* warnings, *alone* and *per se,* cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession. They cannot assure in every case that the Fourth Amendment violation has not been unduly exploited. See *Westover* v. *United States,* 384 U. S. 436, 496-497 (1966).

"While we therefore reject the *per se* rule which the Illinois courts appear to have accepted, we also decline to adopt any alternative *per se* or 'but for' rule. The petitioner himself professes not to demand so much. Tr. of Oral Arg. 12, 45, 47. The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see *Johnson* v. *Louisiana,* 406 U. S. 356, 365 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun* v. *United States,* 371 U. S., at 491. The voluntariness of the statement is a threshold requirement. Cf. 18 U.S.C. § 3501. And the burden of showing admissibility rests, of course, on the prosecution."

In *United States v Johnson* (626 F2d 753 [9th Cir 1980], *affd*

457 US 537 [1982]), the defendant was arrested in his home by agents with drawn guns. He was given *Miranda* warnings and agreed to cooperate. The defendant thereafter made a statement at a police station. The Ninth Circuit suppressed both statements, observing "Having given one statement which inculpated him in the crime, he had already committed himself; there was little incentive to withhold a repetition of it." (626 F2d, at p 759.)

In all cases in which consent of the defendant is at issue, the People have a heavy burden of showing the voluntariness of the alleged consent. *(People v Whitehurst,* 25 NY2d 389, 391 [1969].) On a motion to suppress statements, the burden of proof is upon the People to prove admissibility beyond a reasonable doubt. *(People v Huntley,* 15 NY2d 72, 78 [1965].)

In the instant case, Criminal Term properly suppressed the statement given' by the defendant in his apartment on the grounds that the police officers should have obtained a warrant under *Payton v New York* (445 US 573). There was no reasonable explanation for the failure to obtain a warrant. Under existing law, an arrest warrant cannot be issued until an accusatory instrument has been filed (CPL art 120). Once an accusatory instrument has been filed a defendant may not be questioned in the absence of counsel. *(People v Samuels,* 49 NY2d 218 [1980]; *People v Settles,* 46 NY2d 154 [1978].) Quite possibly, the detectives may have felt it more expedient to arrest the defendant summarily, rather than seek a warrant, in light of the restrictions on questioning.

There was no significant intervening event between the defendant's initial statement, found by Criminal Term to be the result of his unlawful arrest, and the written statement which is the subject of this appeal.