Titone, J.
(concurring). I concur in the majority’s result and reasoning on constraint of our recent decision in People v Conyers (68 NY2d 982). In that case, the court, for the first time and without further discussion, utilized the factors delineated in Brown v Illinois (422 US 590; see also, Rawlings v Kentucky, 448 US 98) to determine whether statements made by a defendant arrested in violation of the rule enunciated in Payton v New York (445 US 573) were sufficiently attenuated from the "illegality” to permit their admission into evidence. Despite my concurrence, here and in Conyers (supra), I continue to have serious misgivings about the unquestioning use of the Brown analysis in cases involving Payton violations. [1]
As a threshold matter, before attenuation is considered, the courts must first determine whether "the challenged evidence is in some sense the product of illegal governmental activity” (United States v Crews, 445 US 463, 471). In cases such as Brown v Illinois (supra) and its progeny, an affirmative answer to that preliminary question may be assumed, since the "illegality” is the absence of probable cause and the wrong consists of the police’s having control of the defendant’s person at the time he made the challenged statement. In these cases, the "challenged evidence” — i.e., the postarrest confession — is unquestionably "the product of [the] illegal government activity” — i.e., the wrongful detention. In cases involving Payton violations, in contrast, the initial causal relationship between the illegality and the subsequently obtained statement is more dubious. Unlike in Brown (supra), it is not the detention itself that is wrongful, but rather the manner in which the arrest was carried out. Although we sometimes use *626 legal shorthand and refer to the police action as an "illegal arrest,” the true wrong in Payton cases lies not in the arrest but in the unlawful entry into a dwelling without proper judicial authorization.[2] Whether there is a sufficient causal relationship between this unlawful entry and the police’s subsequent obtaining of a statement is a matter that should be explored before the court embarks on the more traditional attenuation inquiry (Crews v United States, supra).[3] It was apparently this missing step that troubled Justice Sandler at the Appellate Division (see, 124 AD2d 472 [Sandler, J., concurring]). In my view, the absence of guidance from this court on the issue will continue to lead to analytical problems in future Payton cases.

. Contrary to the majority’s assertion and the views of one commentator (see, majority opn, at 623, n 2), the misgivings I express here are far more substantial than a simple "misapplication” of the "inevitable discovery doctrine.”

. The precise holding of the Supreme Court in Payton was not that the arrest per se was unlawful, but rather that an otherwise improper warrant-less entry into the home cannot be justified by the sovereign’s common-law right to effect an arrest without a warrant, even when the arrest is supported by probable cause. This reading of Payton is evident both from Justice Stevens’ characterization of the question presented (445 US 573, 574 ["the constitutionality of * * * statutes that authorize police officers to enter a private residence without a warrant * * * to make a routine felony arrest”]) and from the court’s rationale (id., at 589-590): "But the critical point is that any differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind. The two intrusions share this fundamental characteristic: the breach of the entrance to an individual’s home * * * In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.”
The language quoted by the majority — that " 'a "basic principle of Fourth Amendment law” [is] that searches and seizures inside a home without a warrant are presumptively unreasonable’ ” (majority opn, at 623-624, quoting Payton v New York, supra, at 586 [emphasis supplied]) — is certainly not to the contrary.

. In People v Riddick (51 NY2d 764), we ordered suppression of physical evidence found in a dresser drawer while the police were unlawfully on the premises without a warrant. In that case, there was a logical causative relationship between the unlawful entry and the discovery of the physical evidence on the premises. Thus, Riddick is not inconsistent with the view that it is the warrantless entry, and not the arrest, that Payton proscribes. In contrast, there is no such logical causative relationship where, as here, the evidence to be suppressed is a confession made at the police station after the in-home arrest has been completed. Further, contrary to the majority’s suggestion (majority opn, at 624), the Supreme Court’s holding in United States v Johnson (457 US 537) is not controlling because there is no indication that the court, which was concerned with the retroactivity issue, even considered the attenuation problem that the case presented (see, People v Ford, 62 NY2d 275, 281, n).