OPINION OF THE COURT
Simons, J.
This matter is before us on remand from the United States Supreme Court following reversal and reinstatement of the judgment against defendant (see, New York v Harris, 495 US —, 110 S Ct 1640, revg People v Harris, 72 NY2d 614). We must now determine whether evidence submitted in support of defendant’s conviction, though admissible under Federal standards, should be suppressed under our State constitutional provision prohibiting unlawful searches and seizures (see, NY Const, art I, § 12).
The challenged evidence consisted of statements defendant made to the police after they arrested him in his apartment for the murder of his girlfriend. The police had probable cause, developed during the five days between the crime and the arrest, but arrested defendant without a warrant in *436 violation of the rule in Payton v New York (445 US 573).[1] Defendant made an inculpatory statement in his apartment, another one hour later at the police station and a third statement on videotape. The first statement was suppressed as the product of the illegal arrest and the third was suppressed because it was involuntary. Those rulings are not challenged. The issue now before us relates to the second statement. Defendant claimed that it should be suppressed under the Federal and State Constitutions (see, US Const 4th Amend; NY Const, art I, § 12).
When we previously reviewed the question, we found the station house statement was tainted by the prior illegality and unredeemed by attenuation. Accordingly, we suppressed it on Fourth Amendment grounds (People v Harris, 72 NY2d 614, 620-624, supra). The holding represented our view of what the Federal Constitution required and was consistent with an earlier decision in this Court on the subject (see, People v Conyers, 68 NY2d 982; see also, United States v Johnson, 626 F2d 753, 759, affd 457 US 537; United States v George, 883 F2d 1407, 1416, n 8).
The Supreme Court subsequently granted certiorari and reversed (New York v Harris, 495 US —, 110 S Ct 1640, supra). It held that the police illegality was in the entry, not the arrest, and that exit from the apartment necessarily broke any causal connection between the wrong and the later statement. Inasmuch as the police had probable cause to arrest the defendant, the exclusionary rule did not bar use of his station house statement even though the warrantless arrest in defendant’s apartment violated the rule in Payton v New York (New York v Harris, 495 US —, —, 110 S Ct 1640, 1644-1645, supra). No attenuation was required, the Court held, because the deterrent value of suppressing this type of statement was *437 minimal: "[i]t is doubtful * * * that the desire to secure a statement from a criminal suspect would motivate the police to violate Payton” (New York v Harris, supra, at —, at 1644).
Inasmuch as the Supreme Court ruled against defendant on his Federal claim, we are now obliged to consider on remand the other claim he advanced, whether the State Constitution requires suppression of the station house statement.[2] We conclude that the Supreme Court’s rule does not adequately protect the search and seizure rights of citizens of New York. Accordingly, we hold that our State Constitution requires that statements obtained from an accused following a Payton violation must be suppressed unless the taint resulting from the violation has been attenuated.
Because the language of the Fourth Amendment of the United States Constitution and section 12 of article I of the New York State Constitution prohibiting unreasonable searches and seizures is identical, it may be assumed, as a general proposition, that the two provisions confer similar rights (see, People v P. J. Video, 68 NY2d 296, 304; People v Johnson, 66 NY2d 398, 406-407; People v Ponder, 54 NY2d 160, 165). Such consistency is desirable because it facilitates implementation of search and seizure rules. Nonetheless, the two documents do not present a monolithic legal code. Our federalist system of government necessarily provides a double source of protection and State courts, when asked to do so, are bound to apply their own Constitutions notwithstanding the holdings of the United States Supreme Court (see, People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557, quoting People v Barber, 289 NY 378, 384). Sufficient reasons appearing, a State court may adopt a diiferent construction of a similar State provision unconstrained by a contrary Supreme Court inter *438 pretation of the Federal counterpart. The present case comes to us on remand to determine whether we should do so here.
We detailed some general rules governing independent State review in People v P. J. Video (68 NY2d 296, 301-302, supra) and have revisited the subject several times since (see, e.g., People v Torres, 74 NY2d 224, 228-230; People v Griminger, 71 NY2d 635, 638-639; People v Alvarez, 70 NY2d 375, 378-379; People ex rel. Arcara v Cloud Books, supra, at 557-558). Two different analyses are employed: an interpretive analysis which examines the language of the provisions and a noninterpretive analysis which "proceeds from a judicial perception of sound policy, justice and fundamental fairness” (People v P. J. Video, supra, at 303). In the present case, the language of the Fourth Amendment of the Federal Constitution and section 12 of article I of our own Constitution not only contain similar language but share a common history (see, People v P. J. Video, 68 NY2d 298, 304, n 4, supra; People v Johnson, 66 NY2d 398, 406, supra). If a distinction is to be made in what they require, therefore, it must rest on a noninterpretive analysis of the State provision in which the Court focuses not on the text of the clause but on matters peculiar to this State. In doing so, we have considered such factors as "any preexisting State statutory or common law defining the scope of the individual right in question; the history and traditions of the State in its protection of the individual right; any identification of the right in the State Constitution as being one of peculiar State or local concern; and any distinctive attitudes of the State citizenry toward the definition, scope or protection of the individual right.” (People v P. J. Video, supra, at 303.)
Employing this analysis in the past, we have delineated an independent body of search and seizure law under the State Constitution to govern citizen-police encounters when doing so best promotes " 'the protection of the individual rights of our citizens’ ” (People v P. J. Video, 68 NY2d 296, 304, supra, quoting People v Johnson, 66 NY2d 398, 407, supra; see, People v Torres, 74 NY2d 224, 228, supra). Whether this is a case requiring a special State rule to protect the constitutional rights of accuseds necessarily requires consideration of the consequences flowing from the police illegality and whether some deterrent is necessary to remove any incentive to the police to violate the law. It is not dispositive that defendant waived his Miranda rights before speaking. The interest in deterrence does not disappear just because defendant’s state *439 ment was voluntary or because he waived his right to counsel. Indeed, if the statement was involuntary there would never be need to consider the violation of the Search and Seizure Clause (see, e.g., Brown v Illinois, 422 US 590, 601-602; Dunaway v New York, 442 US 200, 216-217; Taylor v Alabama, 457 US 687, 690).
We turn, therefore, to the circumstances peculiar to New York and conclude that although attenuation may not be necessary to deter Payton violations under Federal law or in the Nation generally, the Supreme Court’s rule is not adequate to protect New York citizens from Payton violations because of our right to counsel rule.
The safeguards guaranteed by this State’s Right to Counsel Clause are unique (NY Const, art I, § 6). By constitutional and statutory interpretation, we have established a protective body of law in this area resting on concerns of due process, self-incrimination and the right to counsel provisions of the State Constitution which is substantially greater than that recognized by other State jurisdictions and "far more expansive than the Federal counterpart” (People v Bing, 76 NY2d 331, 338-339; People v Davis, 75 NY2d 517, 521; People v Hobson, 39 NY2d 479, 483-484; see also, 1 LaFave and Israel, Criminal Procedure § 6.4, at 468-469; and Galie, The Other Supreme Courts: Judicial Activism Among State Supreme Courts, 33 Syracuse L Rev 731, 764). The Court has described the New York rule as a "cherished principle”, rooted in this State’s prerevolutionary constitutional law and developed "independent of its Federal counterpart” (People v Settles, 46 NY2d 154, 160-161). The "highest degree of [judicial] vigilance” is required to "safeguard” it (see, People v Cunningham, 49 NY2d 203, 207). Manifestly, protection of the right to counsel has become a matter of singular concern in New York and it is appropriate that we consider the effect of Payton violations upon it.
The different views expressed by the Supreme Court and this Court in the case before us illustrate the distinctive Federal and State right to counsel rules and the concerns they engender. Under both Federal and State law, the right to counsel attaches once criminal proceedings have commenced (Kirby v Illinois, 406 US 682; People v Samuels, 49 NY2d 218). Under the Federal rule, however, criminal proceedings do not necessarily start when an arrest warrant is issued. Police may interrogate a suspect in the absence of a lawyer without *440 violating his or her right to counsel even though the arrest is made pursuant to a warrant (see, United States v Pace, 833 F2d 1307, 1310-1312; United States v Reynolds, 762 F2d 489, 493; 1 LaFave and Israel, Criminal Procedure § 6.4 [e]). But in New York, criminal proceedings must be instituted before the police can obtain a warrant. Our Criminal Procedure Law provides that an arrest warrant may not issue until an "accusatory instrument” has been filed (CPL 120.20; and see, People v Blake, 35 NY2d 331, 339-340). Thus, in New York once an arrest warrant is authorized, criminal proceedings have begun, the indelible right to counsel attaches and police may not question a suspect in the absence of an attorney (People v Samuels, 49 NY2d 218, 221-222, supra; People v Settles, 46 NY2d 154, supra).
The practical effect of these rules is that little incentive exists for police to evade Payton in the hopes of securing a statement under Federal rules and, as the Supreme Court concluded, the incremental deterrent resulting from suppressing statements made after an illegal arrest in the home would be minimal. In New York, however, police are prohibited from questioning a suspect after an arrest pursuant to a warrant unless counsel is present. They have every reason to violate Payton, therefore, because doing so enables them to circumvent the accused’s indelible right to counsel. Indeed, the evidence indicated that the police were motivated by just such considerations in this case. Even though they had developed probable cause for the arrest early in their investigation, they did not secure a warrant but arrested defendant in his apartment, a procedure they knew was prohibited by their departmental rules, and then questioned him in the absence of an attorney (see, People v Harris, 72 NY2d 614, 622, supra). If the police had entered the apartment pursuant to a warrant, they could not have questioned defendant in the absence of counsel. They should not enjoy greater latitude simply because they neglected to obtain a warrant, as Payton requires, and entered the apartment illegally. It is this interplay between the right to counsel rules established by New York law and the State’s search and seizure provisions which provides a compelling reason for deviating from the Supreme Court’s determination in this case. We adhere to our earlier decision, therefore, and hold that statements obtained from an accused following an arrest made in violation of Payton are not admissible under the State Constitution if they are a product of the illegality.
Based upon the facts found by the courts below, we deter *441 mine that the causal connection between the illegal arrest and defendant’s statement in the police station was not sufficiently attenuated from the Payton wrong because of the temporal proximity of the arrest and the statement, the absence of intervening circumstances and the purpose and flagrancy of the police misconduct (see, People v Conyers, 68 NY2d 982, supra; People v Johnson, 66 NY2d, supra, at 407; People v McGrath, 46 NY2d 12, 28-29). Inasmuch as the evidence of attenuation was insufficient as a matter of law, the station house statement must be suppressed under article I, § 12 of the New York Constitution (see, People v Harris, 72 NY2d 614, 620-623, supra).[3]
Accordingly, on reargument following remand from the United States Supreme Court, the order of the Appellate Division should be reversed, defendant’s statement suppressed and a new trial ordered.

. The dissent contends that the police intended merely to locate defendant and then obtain a warrant, if necessary (dissenting opn, at 445). The trial court found as a fact that the three officers went to the apartment to take defendant into custody, that with guns drawn they blocked the exits from the apartment, knocked on the door and, when defendant answered the knock, entered the apartment and arrested him. It concluded on this evidence that "[n]o more clear violation” of Payton could be established. Three reviewing courts have accepted that finding: the Appellate Division, which left Supreme Court’s factual findings undisturbed (124 AD2d 472); this Court (72 NY2d 614), and the United States Supreme Court (495 US —, —, 110 S Ct 1640, 1642). Indeed, the statement obtained in the apartment, although voluntary for Fifth Amendment purposes, was suppressed because the entry was unlawful and the parties no longer challenge that ruling.

. The dissent takes the view that the result on remand is controlled by the Supreme Court’s ruling (see, dissenting opn, at 443). Quite the contrary is true. Defendant sought relief under both the State and Federal Constitutions. Relief on Federal grounds has now been denied by the Supreme Court. We have no choice, therefore, except to address and resolve the State claim because the conduct complained of must also satisfy our State Constitution (see, People ex rel. Arcara v Cloud Books, 68 NY2d 553, 555-556; People v Alvarez, 70 NY2d 375, 378). This would be so whether we had determined that relief is not available under the United States Constitution in the first instance (see, e.g., People v Cintron, 75 NY2d 249; Cooper v Morin, 49 NY2d 69) or on remand from the Supreme Court after it has decided the issue, as in this case (see, e.g., People v Alvarez, supra; People ex rel. Arcara v Cloud Books, supra; People v Class, 67 NY2d 431).

. The dissenters contend that the Court is bound by the finding of attenuation below (dissenting opn, at 446).
This Court may not find facts, but it is within our power to review the facts as found by the courts below to determine whether they are sufficient under the applicable legal standard. This familiar rule was stated by the dissent in the first appeal. When arguing unsuccessfully that the entry was consensual, the dissenters stated "this question is reviewable by us. Both lower courts held without analysis that the first confession was suppressible. However, simply put, when using the correct legal standard together with the facts found by those courts this conclusion is without basis (Cohen and Karger, Powers of the New York Court of Appeals §§ 114, 115 [rev ed])”. (People v Harris, 72 NY2d 614, 628 [Wachtler, Ch. J., dissenting].)