OPINION OF THE COURT
Caesar D. Cirigliano, J.
This is defendant’s motion to suppress a series of statements *538 pursuant to Payton v New York (445 US 573) and People v Harris (77 NY2d 434). In order to decide this issue, the court must address two questions: (1) what is the effect in New York of an arrest in New Jersey by New York police that violates New Jersey law, and (2) does the New York State Constitution have extraterritorial effect so that it applies to a New York defendant as he is being apprehended in New Jersey by New York police? The first question has been answered by our highest court: People v Sampson (73 NY2d 908). The second is an issue of first impression in this state although it has been addressed with conflicting results in other jurisdictions.
On August 12, 1989, Lucas Castro was shot and killed and Denicio Castro wounded by the defendant during an altercation. The defendant who had been living in the Bronx with his family fled to New Jersey and changed his name. Some 12 years later, on March 29, 2001, New York City police officers, having located the defendant’s apartment in West New York, New Jersey, arrested him in his apartment without a warrant and, without surrendering him to New Jersey officials for extradition proceedings, transported him back to New York. The statements that the defendant seeks to suppress were made to New York City police officers: first, at approximately 8:00 p.m. on March 29, 2001 at a New Jersey police station; then, at 11:20 and 11:40 later that same night at a New York City police station; and, finally, at 3:40 the next morning.
Defendant argues that his arrest in his apartment in New Jersey by New York police officers violated Payton v New York (445 US 573) and that such violation and the failure thereafter of the New York police to surrender him to New Jersey officials for extradition proceedings rendered his subsequent statements subject to suppression under People v Harris (77 NY2d 434).
Pursuant to Payton v New York (445 US 573), absent an exception not applicable here, a defendant cannot be arrested in his home without a warrant. This rule was violated. Without consent, exigency or hot pursuit, the New York police entered the defendant’s New Jersey apartment and arrested him. In addition, as out-of-state police officers not in hot pursuit, the New York police had only the arrest authority of private citizens in New Jersey. While not entirely clear, it appears that a citizen in New Jersey can only arrest for offences committed in his presence (compare, NJ Stat Ann § 2A: 169-3; O’Brien v Borough of Woodbury Hgts., 679 F Supp 429 [D NJ 1988], with NJ Stat Ann § 2A:155-4), and the crimes for which defendant was arrested had not been committed in the arrest *539 ing officers’ presence. What is clear, however, is that once arrested the defendant should have been turned over to New Jersey officials for extradition proceedings. (NJ Stat Ann § 2A:155-5.) Based on this arrest in violation of Payton and the failure of the New York police to follow New Jersey’s extradition statute, defendant argues for suppression of his statements.
Payton, however, requires suppression under the Fourth Amendment only of those statements taken in the defendant’s home. (New York v Harris, 495 US 14.) Provided that the arrest was supported by probable cause, voluntary statements made outside the home are admissible under Payton. (Supra.) Here, the defendant’s arrest was supported by probable cause and all the statements were taken outside the apartment and after the providing of Miranda warnings. Thus, none of the defendant’s statements are subject to suppression under Pay-ton and the Fourth Amendment.
With respect to the New York officers’ violation of New Jersey law, the decision is controlled by People v Sampson (73 NY2d 908). In Sampson, the New York Court of Appeals held that where New York police traveled to Vermont and interrogated and arrested and transported the defendant back to New York in violation of Vermont’s extradition statute his subsequent statements were not subject to suppression because there had been no constitutional violation. (Accord, State v Bonds, 98 Wash 2d 1, 653 P2d 1024, cert denied 464 US 831; see also, People v Dyla, 142 AD2d 423; but see, Commonwealth v Sadvari, 561 Pa 588, 752 A2d 393 [2000] [failure to follow foreign state extradition statute renders arrest illegal and mandates suppression]; State v Bonds, 98 Wash 2d 1, 22, 653 P2d 1024, 1036 [Utter, J., dissenting: return of defendant to Washington in violation of Oregon’s extradition statute violated the Fourth Amendment].) So too here, since the arrest was supported by probable cause, the violation of New Jersey’s extradition statute does not require suppression of the statements taken thereafter.[1]
*540 In addition to the New York officers’ violation of New Jersey law, the defendant moves for suppression of the statements under People v Harris (77 NY2d 434, supra). In Harris, the defendant was arrested in his home in violation of Payton and then made statements in and out of his home. The United States Supreme Court held that the Fourth Amendment required suppression of only the statements made in the home. Once the defendant had been removed therefrom, Payton no longer applied. (New York v Harris, 495 US 14 [1990].) Upon remand to our Court of Appeals, however, that tribunal held that due to the interplay between our “unique” right to counsel rules and this state’s search and seizure jurisprudence, such an interpretation was insufficient. (People v Harris, 77 NY2d 434, 439-440, supra.) The Court of Appeals therefore deviated from the Supreme Court’s interpretation and announced a different rule under article I, § 12 of the New York Constitution: that where there has been a Payton violation, statements taken even outside the home will be suppressed unless sufficiently attenuated from that wrong. (Supra at 440-441.) It is this rule that the defendant seeks to invoke.[2]
*541 Whether this court should suppress evidence based on a violation of New York constitutional law occurring in another state is a question of first impression in this jurisdiction.[3] The issue has arisen in other jurisdictions, however, with conflicting results. In general, the cases have organized themselves around the principle that the determining factor is not only whether forum law has been violated in the situs state but whether it has been violated by forum police or others acting as agents of the forum state.
Thus, in Echols v State (484 So 2d 568 [Fla 1985]) where Indiana police taped a conversation between an informant and the defendant in a manner legal under the laws of Indiana but illegal under the laws of Florida, the Florida Supreme Court refused to suppress the statements. The court, without explicitly addressing the question of whether Florida’s laws applied in Indiana, reasoned that since the primary purpose of suppression is to deter illegal police activity and the police activity there was legally performed by Indiana police under Indiana law suppression was unwarranted.
Similarly, in People v Blair (25 Cal 3d 640, 602 P2d 731 [1979]), where federal officials seized telephone records in accordance with Pennsylvania law, the California Supreme Court denied suppression despite the fact that the seizure would have violated the California Constitution if it had occurred in California. The court, without addressing the question of whether the California Constitution applied to the defendant in Pennsylvania, identified two possible reasons for suppression: deterrence of illegal police activity and preservation of *542 judicial integrity. Based on the fact that the conduct was legal where performed under federal and Pennsylvania law, the court held that neither reason for suppression would be furthered. Blair was then followed by Pooley v State (705 P2d 1293 [Alaska 1985]) in which the Supreme Court of Alaska adopted the reasoning of the California Supreme Court in Blair. (Accord, People v Barrow, 133 Ill 2d 226, 549 NE2d 240 [1989]; State v Mollica, 114 NJ 329, 554 A2d 1315 [1989]; People v Phillips, 41 Cal 3d 29, 711 P2d 423 [1985]; State v Rivers, 420 So 2d 1128 [La 1982].)
At about this time, however, fact patterns began to arise in which the forum police (or the situs police acting on behalf of the forum police) obtained evidence by means that while legal under situs law was illegal under forum law. Deterrence and judicial integrity therefore became real factors in the equation — but only if forum law applied in the situs state.[4] Necessarily, the courts began wrestling with the question of the extraterritorial application of their laws and constitutions. (See, e.g., State v Bridges, 83 Haw 187, 925 P2d 357 [1996]; State v Davis, 313 Or 246, 252 n 4, 834 P2d 1008, 1011 n 4 [1992].)
Thus, in People v Mattson (37 Cal 3d 85, 688 P2d 887 [1984]) the Supreme Court of California suppressed statements made by the defendant to California police in Nevada that while legal under Nevada law would have violated the California version of the Fifth Amendment if made in California. In doing so, the Mattson court relied on federal case law to the effect that federal officials are bound by the United States Constitution even when they act outside the boundaries of the United States.
Shortly thereafter, the United States Supreme Court was confronted squarely with the issue of the extraterritorial application of the Fourth Amendment. Earlier, in Reid v Covert (354 US 1) they had held that the Fifth and Sixth Amendments applied to United States citizens abroad. Based thereon, *543 the Ninth Circuit held federal law enforcement officials bound by the Fourth Amendment when they seized property owned by a Mexican national in Mexico. (United States v Verdugo-Urquidez, 856 F2d 1214.) The Supreme Court reversed. The majority held that the Fourth Amendment does not apply to the search and seizure by United States agents of property owned by a nonresident alien located in a foreign country, (United States v Verdugo-Urquidez, 494 US 259 [1990].) In doing so the Court distinguished Reid. Reid they said was a Fifth/Sixth Amendment case and those Amendments protect the “person” and an “accused,” respectively, i.e., any defendant. (Accord, NY Const, art I, § 6.) The Fourth Amendment, on the other hand, applied only to “the people,” a term which implied either United States citizenship or United States residency at the time of the search. In addition, the Fourth Amendment is or is not violated at the moment of the search or seizure while the Fifth and Sixth Amendments ultimately not until trial.[5] The dissent, on the other hand, would have applied the Fourth Amendment extraterritorially with respect to any defendant to be held accountable under our laws. (Supra at 297 [Blackmun, J., dissenting].)
Simultaneously, the Supreme Court of Oregon was deciding State v Davis (313 Or 246, 834 P2d 1008 [1990].) In Davis, the defendant was arrested in his Mississippi home by Mississippi police for an Oregon crime based on an Oregon fugitive warrant. He was then interrogated in Mississippi by Oregon police without the presence of his counsel on an unrelated matter. In response to the defendant’s argument that both the arrest and interrogation violated his rights under the Oregon Constitution, the Davis court held that: (1) Oregon’s constitutional protection against unreasonable searches and seizures includes the right in a criminal prosecution in Oregon to be free from the use of evidence that has been obtained anywhere in violation of the defendant’s rights thereunder, and (2) that Oregon’s version of the Fifth and Sixth Amendments likewise applies extraterritorially. (Supra, 313 Or at 251-252, 834 P2d at 1010-1011.) Additionally, the court ruled that if these constitutional provisions had been violated suppression would be required as the only appropriate means to protect such *544 rights.[6] (Supra, 313 Or at 253, 834 P2d at 1012.) Thus, although not expressly relying thereon, the Davis court arguably adopted the position of the dissent in Verdugo-Urquidez as a matter of state constitutional law. (Accord, State v Cauley, 863 SW2d 411, 416 [Tenn 1993] [Tennessee Constitution applies to evidence obtained by or at the behest of Tennessee authorities anywhere if it is to be used in a Tennessee prosecution]; D'Antorio v State, 837 P2d 727, 731-732 [Alaska 1992] [Alaska law applies to search by Alaska police in Ohio]; see also, State v Nichols, 1995 WL 509998, 1995 Neb App LEXIS 277 [Neb].)
Be that as it may, based in large part on Verdugo-Urquidez, the Supreme Court of Hawaii then rejected Mattson and Davis. (State v Bridges, 83 Haw 187, 925 P2d 357, supra.) In Bridges the defendant, a citizen of California who had never personally set foot in Hawaii, was indicted in Hawaii for conspiracy to promote a dangerous drug after making incriminating statements in California. The statements had been videotaped in California by Hawaii police in accordance with California law but in a way that violated the Hawaii Constitution if it applied. In answering that question, the Bridges court first looked to Verdugo-Urquidez and posited that based thereon and based on the language of their Constitution while it might apply extraterritorially it would only apply to citizens of Hawaii. That, however, in the court’s view, might run afoul of the Privileges and Immunities Clause of the United States Constitution.[7] The Bridges court therefore looked to the legislative history of the constitutional provision and, finding nothing to indicate that it was intended to apply extraterritorially, held that it did not. Based thereon, the Bridges court held that it did not protect the defendant in California, and therefore, could not have been violated by the Hawaii police there. Since the Hawaii police had not violated the defendant’s rights, there was no illegal police conduct to deter, nor judicial integrity to preserve, by suppression.
This court believes that were the issue to reach our Court of Appeals that tribunal would hold article I, § 12 of the New York Constitution to have extraterritorial effect. This court *545 reaches that conclusion based on the language of article I, § 12, United States v Verdugo-Urquidez (494 US 259, supra), State v Cauley (863 SW2d 411, supra), State v Davis (313 Or 246, 834 P2d 1008, supra), the Privileges and Immunities Clause of the United States Constitution, and People v Harris (77 NY2d 434).
Article I, § 12 provides in pertinent part: “The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
Just quoting the above language, however, begs the question: who are “the people” this section was intended to protect? Analyzing the identical language of the Fourth Amendment, the Supreme Court held that while it might well apply to United States citizens abroad, it did not apply to non-United States citizens abroad. (United States v Verdugo-Urquidez, 494 US 259, supra.) Analogizing therefrom, one could argue that article I, § 12 should apply out of state only to New York citizens. This, however, raises more questions than it answers. New York citizens when: at the time of the crime or at the time of the arrest? And if out-of-state citizens are afforded greater rights than are afforded out-of-state non-New York citizens has not the Privileges and Immunities Clause been violated? (See, State v Bridges, 83 Haw 187, 193 n 9, 925 P2d 357, 363 n 9, supra.) Thus, the only way to avoid this conundrum is to hold that either article I, § 12 has no extraterritorial application, or that if it does it applies to every New York defendant regardless of state citizenship. (See, State v Davis, 313 Or 246, 834 P2d 1008, supra; see also, United States v Verdugo-Urquidez, 494 US 259, 297, supra [Blackmun, J., dissenting].)
To hold that article I, § 12 has no extraterritorial application, however, would be to allow New York police to obtain evidence (including statements) out of state in a manner that would violate that section and our “unique” right to counsel rules but then use such evidence with impunity at trial here. Thus, in this case, if article I, § 12 has no extraterritorial application, the defendant’s statements, even if not attenuated from the New York officers’ Payton violation, would be admissible; and admissible notwithstanding that the ultimate constitutional violation with respect to article I, § 6 (right to counsel) would not occur until the evidence was admitted at trial here. (See, United States v Verdugo-Urquidez, 494 US 259, 264, supra.)
*546 When confronted with a constitutional interpretation that failed to adequately protect the interplay between our right to counsel rules and search and seizure jurisprudence, the Court of Appeals did not hesitate from deviating from federal precedent, holding in People v Harris (77 NY2d 434, supra) that article I, § 12 was broader than the Fourth Amendment. So too here, it is only by holding article I, § 12 to apply extraterritorially to every New York defendant that our right to counsel rules can be preserved. (See also, State v Kell, 303 Or 89, 734 P2d 334 [1987] [out-of-state questioning by Oregon police had to comply with Oregon Constitution]; Theis, Choice of Law and the Administration of the Exclusionary Rule in Criminal Cases, 44 Tenn L Rev 1043, 1049 [1977].) Accordingly, only those statements sufficiently attenuated from the original Payton violation in accordance with People v Harris (77 NY2d 434, supra) shall be admissible.

. Some courts have viewed this question as one of evidence and procedure and therefore applied their own law under the rule that the law of the forum controls such matter. (Burge v State, 443 SW2d 720 [Tex Crim App 1969] [evidence illegally obtained in Oklahoma admissible in Texas prosecution under Texas rules of evidence].) Other courts have addressed the issue as one of conflicts of law. In other words, should the forum apply its own laws or the law of the state where the violation occurred? (See, e.g., People v Saiken, 49 Ill 2d 504, 275 NE2d 381 [1971] [since the crime was committed *540 in Illinois and the trial was to be held in Illinois, Illinois law applies because such state has a greater interest in the proceedings than Indiana where the violation of law occurred].) Both approaches have been criticized. (See, Morrison, Choice Of Law For Unlawful Searches, 41 Okla L Rev 579 [1988] [Morrison].) The procedure-substance formulation has been criticized on the basis that one cannot appropriately reach the law of evidence until the question of the legality of such evidence’s acquisition has been addressed which brings one back to a question of substantive law. Alternatively, the “significant relationship” test of classical civil conflicts has been criticized for failing to clearly identify the conflict being resolved. In other words, in Saiken the law of Illinois was held to take precedence over the law of Indiana. The law of Indiana is, however, the law of Indiana and it was violated. The issue is not which state’s substantive law controls but, given the violation, does the forum state’s law of suppression mandate such result? In other words, the issue is whether Illinois law requires, under the facts of the case, suppression for a violation of Indiana law. (1 LaFave, Search and Seizure § 1.5 [b], at 148.) Although the Sampson Court did not explicitly engage in such a conflicts analysis, the decision, viewed in such terms, may be restated as follows: although the New York police violated the Vermont extradition statute, since there was probable cause for the arrest and no constitutional provision was violated, New York law does not require suppression of the statements. (See, State v Bonds, 98 Wash 2d 1, 653 P2d 1024 [1982], cert denied 464 US 831; see also, State v Gadsden, 303 NJ Super 491, 697 A2d 187, cert denied 152 NJ 187, 704 A2d 17 [unauthorized arrest does not require suppression of evidence where there is no constitutional violation].)

. It must also be noted that New Jersey has its own common-law analog to the Fifth and Sixth Amendments that gives its residents greater protection than that afforded by the Federal Constitution. (See, State v Hartley, *541 103 NJ 252, 511 A2d 80 [1986].) Be that as it may, the rights granted thereunder are not as expansive as those announced in People v Harris. Thus, there is a true conflict between New York and New Jersey law in this area. (Cf., Morrison at 615 [conflicts analysis required only where true conflict of law exists].)

. The converse situation occurred in the case of People v La Fontaine (159 Misc 2d 751). In La Fontaine, the suppression court found that New Jersey police had arrested the defendant in his New York City apartment upon a New Jersey warrant for a New Jersey crime. After entering the apartment, the New Jersey police observed drugs in plain view. After the defendant was indicted therefor in New York, the suppression court held the warrant to be valid and denied suppression of the drugs. The defendant then pleaded guilty and appealed. The Appellate Division, First Department, affirmed upon the theory that although the New Jersey warrant was invalid in New York, the New Jersey police had effectuated a citizen’s arrest of the defendant outside of his apartment. (235 AD2d 93, 98.) The Court of Appeals then reversed and remanded for further proceedings finding that the issue upon which the Appellate Division had decided the case had not been raised below. (92 NY2d 470.)

. Clearly, evidence is not to be suppressed based on a theoretical violation of a constitutional provision. It is only where the moving defendant’s personal constitutional rights have been violated by someone acting on behalf of the government that the defendant even has standing to seek suppression — and this is true notwithstanding that the police may have violated the constitutional rights of others by the complained of conduct. Thus, the laws of the forum state can only be a limit on the conduct of its agents if it applies to the defendant when they act in the situs state.

. It is for this reason that statements which would otherwise violate the Fifth Amendment can be compelled under a grant of immunity. (See generally, Dripps, The Case For The Contingent Exclusionary Rule, 38 Am Crim L Rev 1, 36 [2001].)

. Interestingly, the court then found that neither constitutional provision had been violated and denied suppression.

. Clearly, citizen and noncitizen residents of every state must be afforded the same rights within such state. What is less clear is whether the Privileges and Immunities Clause is violated if a state affords its out-of-state citizens extraterritorial protections not afforded out-of-state noncitizens. (Compare, Corr, Criminal Procedure and the Conflict of Laws, 73 Geo LJ 1217, 1233 [1985], with Morrison at 607-608.)