(April 15, 2010)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAEED AHMED, Appellant. [898 NYS2d 134]—

Judgment, Supreme Court, New York County (Robert H. Straus, J., at hearing; Edwin Torres, J., at jury trial), rendered July 18, 2007, convicting defendant of three counts of promoting prostitution in the third degree, and sentencing him to an aggregate term of five years' probation with community service, unanimously affirmed.

Defendant's principal contention is that the evidence was legally insufficient to establish his guilt of promoting prostitution in the third degree. Ken Franzblau testified for the prosecution in his capacity as an employee of Equality Now, an advocacy group that researches and investigates possible instances of human trafficking, organized prostitution and sex tourism. Ads for enterprises engaging in these activities are posted on craigslist and other Web sites.

Franzblau found one such posting by an entity called JumpOff

Destinations that arranged for wild party tours to the Dominican Republic, where "anything goes." JumpOff's Web site described package tours including travel, lodging and meals, and featured photos of women in various states of undress. The site also indicated that other photos, which were "too hot" for Internet display, could be obtained by e-mail. Using the pseudonym "Dan Maginn," Franzblau began e-mail correspondence with defendant, who identified himself as "Saaed A.," JumpOff's "customer care representative."

In ensuing correspondence, defendant assured Franzblau that he could provide him with as many women as he could handle, and that there would be enough women for all the men on the tour, adding that the price for the women was not included in the tour package and would have to be paid out of pocket. Defendant informed Franzblau that he procured the women by telephoning them prior to each tour's departure. According to defendant's terms, payment for the tour would have to be made to "Saeed Ahmed/JumpOff Destinations."

In a telephone conversation recorded by the District Attorney's Office, Franzblau discussed tour packages with defendant and made arrangements for a $1,700 tour. Thereafter, an undercover detective visited defendant at his apartment under the pretext of booking such a trip to the Dominican Republic. The detective signed an agreement for four package tours at a price of $6,800, but never made payment or traveled to the Dominican Republic. Police officers subsequently executed a search warrant at defendant's apartment. The items seized included invoices with notations for "Dan Maginn" as well as other customers. In addition, the police recovered a contract with another customer who will be hereinafter referred to as "A.E."

In a postarrest videotaped statement, defendant admitted to being contacted by A.E. via e-mail. Defendant stated that he met A.E. in the Dominican Republic, where the customer paid $1,550 for the tour package. Defendant admitted to providing A.E. with two women during the three-day trip. Records obtained from American Airlines confirmed that defendant had flown from New York to Santiago, Dominican Republic, on March 29, 2006. The airline's records also confirmed that A.E. flew from New York to Santiago on April 6, and returned to New York on April 9.

Defendant's challenge to the legal sufficiency of the evidence is based upon the lack of proof that he employed prostitutes or owned or managed a place of prostitution. Accordingly, defendant argues that his conviction should be reduced to the lesser charge of promoting prostitution in the fourth degree, which

simply involves advancing or profiting from prostitution (Penal Law § 230.20), without any control or ownership of a business or enterprise. On the other hand, "A person is guilty of promoting prostitution in the third degree when he knowingly: 1. Advances or profits from prostitution by managing, supervising, controlling or owning . . . a house of prostitution or a prostitution business or enterprise involving prostitution activity by two or more prostitutes" (§ 230.25).

Four months after defendant's conviction, section 230.25 (1) was amended to expressly include as proscribed conduct the advancement or profiting from prostitution by managing, supervising, controlling or owning "a business that sells travel-related services knowing that such services include or are intended to facilitate travel for the purpose of patronizing a prostitute" (L 2007, ch 74, § 1). Needless to say, defendant was not prosecuted under the statute as amended. Citing the amendment, defendant argues that his conduct, which involved travel-related services, did not come with the ambit of the preamended statute. This argument is unpersuasive because it is refuted by legislative history. The Senate Memorandum in Support of the amendment summarizes that "[s]ection 1 of the bill amends Penal Law § 230.25 to *clarify* that someone who sells travel services to prostitution tourists may be found guilty of third-degree promoting prostitution, a class D felony" (Senate Mem in Support, 2007 McKinney's Session Laws of NY, at 1601 [emphasis added]). Nothing in the preamended statute lends itself to a construction that would have excluded a travel-related enterprise from its coverage. The evidence was thus legally sufficient to prove that defendant managed and controlled "a prostitution business or enterprise involving prostitution activity by two or more prostitutes" within the meaning of section 230.25 (1).

We also reject defendant's argument that *People v Barabash* (35 AD3d 873 [2006]) is controlling. The defendants in *Barabash* ran a tourism business that provided trips to the Philippines and procured "tour guides" who took customers to locations where prostitutes were available, and paid the prostitutes on behalf of the customers. Without elaboration, the Court affirmed the dismissal of a count alleging promoting prostitution in the third degree, finding simply that the evidence before the grand jury "was not legally sufficient to establish that the defendant managed, supervised, controlled, or owned a prostitution enterprise" (*id.* at 874). Here, by contrast, the evidence established that defendant did not engage the prostitutes through intermediaries. As part of his enterprise, defendant himself acted as the direct link between A.E. and the two prostitutes he procured.

Defendant's suppression motion was properly denied. Defendant was arrested in the hallway outside his apartment when the search warrant was executed. On that basis, he argues that his right to counsel under *People v Harris* (77 NY2d 434 [1991]) was illegally circumvented because the police chose to apply for a search warrant rather than an arrest warrant. This argument is also unavailing. There is no constitutional right to be arrested, and the police are not required to stop an investigation at the first indication of probable cause for an arrest (*People v Keller*, 148 AD2d 958, 960 [1989], *lv denied* 73 NY2d 1017 [1989]).

The testimony, photographs and prosecutorial remarks challenged by defendant as inflammatory and prejudicial were permissible within the context of the trial and did not deprive him of a fair trial. Defendant's remaining contention is unpreserved, and we decline to review it in the interest of justice. As an alternative holding, we also reject it on the merits. Concur—Tom, J.P., Saxe, Renwick, DeGrasse and Richter, JJ.