People v Cuencas (2020 NY Slip Op 08118)





People v Cuencas


2020 NY Slip Op 08118


Decided on December 30, 2020


Appellate Division, Second Department


CHAMBERS, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 30, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
JEFFREY A. COHEN
COLLEEN D. DUFFY, JJ.


2016-06693
 (Ind. No. 10094/12)

[*1]The People of the State of New York, respondent,
v
Tramel Cuencas, appellant.


 Paul Skip Laisure, New York, NY (Yvonne Shivers of counsel), for appellant, and appellant pro se.
 Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Denise Pavlides of counsel), for respondent.



APPEAL by the defendant from a judgment of the Supreme Court (Danny K. Chun, J.), rendered May 25, 2016, as amended June 1, 2016, and entered in Kings County, convicting him of murder in the second degree (two counts) and robbery in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements he made to law enforcement officials.



CHAMBERS, J.

This appeal presents an important legal question left open in People v Xochimitl (32 NY3d 1026): whether a home visit by law enforcement officials for the sole purpose of making a warrantless arrest, and which is not otherwise justified by exigent circumstances, violates a defendant's indelible right to counsel.
On November 14, 2012, the defendant and the codefendant, Irving Gavin, robbed and abducted Thomas Dudley (hereinafter Thomas), a drug dealer, at gunpoint from his home in Brooklyn. In doing so, the defendant and Gavin were acting at the behest of another drug dealer, Victor Cruz, who had previously been a close friend of Thomas. Thomas's sister, Monique Dudley (hereinafter Monique), and her cousin, Travis Dudley (hereinafter Travis), were both present when Thomas was abducted. The next day, Thomas's body was discovered in a park in Queens with his throat and wrists slashed. The defendant and Gavin were charged, inter alia, with felony murder and related crimes.
The Defendant's Payton Claim
The following facts were elicited at a joint pretrial hearing held pursuant to Payton v New [*2]York (445 US 573). On the evening of November 17, 2012, Detective Kevin O'Hea interviewed Monique and Travis in connection with Thomas's abduction and murder. Monique told O'Hea that two men had entered her house and kidnapped Thomas at gunpoint after subduing him with zip ties. Monique showed O'Hea three photos from her phone—which she had received from someone on Instagram—depicting some of the individuals involved in the abduction. One of the photos showed Cruz with two other individuals whom Monique identified as the people who had come to her house. Speaking separately with Monique and then Travis, O'Hea obtained additional information about the individuals involved in the abduction. After sharing the photos with fellow officers from another precinct, the defendant and Gavin were identified as suspects, and their photos were included in separate photo arrays that were subsequently shown to Monique, who positively identified both the defendant and Gavin.
In the early morning hours of November 19, 2012, based on Monique's positive identification, a team of police officers visited the home where the defendant and Gavin resided for the purpose of making a warrantless arrest. Specifically, Detective John Fogelman and several other detectives arrived at the subject residence at approximately 5:30 a.m. The building was a single structure with two apartments—one upstairs and the other downstairs. While one of the team members was sent around the back of the building to intercept anyone attempting to flee, the three remaining officers, including Fogelman, stayed in the front and knocked on the door. After several minutes, a male individual, other than the defendant or Gavin, opened the front door. Fogelman testified that he asked for permission to enter, and the individual, without uttering one word, stepped aside "and opened the door a little bit wider," which Fogelman interpreted as an invitation to "[c]ome in."
Once inside the vestibule, Fogelman observed an open door, through which he was able to see the defendant sitting on a couch. Fogelman and his team then "stepped in a little further," told the defendant to "get on the floor," and placed him in handcuffs. Fogelman and his team proceeded to the back bedroom of the apartment, where they apprehended Gavin. Like the defendant, Gavin was "taken to the floor and cuffed." Fogelman did not get the name of the person who opened the door, and took no notes of what transpired at the location.
The individual who answered the door that morning, Kwamel Jeter, was produced as a witness on behalf of the defendant and gave a somewhat different account of Fogelman's visit. Jeter resided on the second floor of the house, while the defendant and Gavin resided on the first floor. According to Jeter, the police banged on the door, knocked on the window, and rang the doorbell for approximately three or four minutes before Jeter went downstairs and opened the door. As soon as he did so, the police ordered him to put his hands up and pushed their way inside. Jeter had opened the door no more than approximately the width of his body and said nothing at all to the police officers. According to Jeter, Fogelman's team pushed him aside and came in with their guns drawn. The police then immediately grabbed the defendant, threw him on the floor and placed him in handcuffs. Then they went into the other room, where they grabbed Gavin, threw him on the floor, and brought him to the living room. The police did not ask for permission to come inside, and Jeter never gave such permission.
During closing arguments at the pretrial hearing, counsel for Gavin argued, in relevant part, that the police made warrantless arrests in this case for the specific purpose of delaying the attachment of the right to counsel and obtaining statements from the defendant and Gavin—a practice which defense counsel characterized as improper (see People v Harris, 77 NY2d 434). Counsel for the defendant adopted the legal arguments made by Gavin's counsel.
As a threshold matter, although the subject house was a two-family residence in which Jeter lived in the upstairs apartment and Gavin lived on the ground floor, the People never argued that the defendant had no expectation of privacy in the common vestibule area through which Fogelman and his team entered (see People v Garvin, 30 NY3d 174). Rather, the People contended that the defendant had no expectation of privacy in any part of the house since it was Gavin's residence, not his. The hearing court, however, explicitly rejected this argument, finding [*3]that the defendant had an expectation of privacy in Gavin's home and treating the front door of the house as the threshold for purposes of its Fourth Amendment analysis with respect to both the defendant and Gavin. On appeal, we are bound by these findings, which were decided in the defendant's favor (see People v LaFontaine, 92 NY2d 470).
On the merits, the hearing court credited the police testimony and concluded that there was no Payton violation, since Jeter tacitly consented to the police entry and had ostensible authority to do so. Specifically, the court credited Fogelman's account of the initial encounter between Jeter and the police, and did not credit Jeter's version of events. Moreover, because the hearing court found no Payton violation, it did not reach the further contention of the defendant and Gavin regarding the alleged violation of their right to counsel.
Contrary to the defendant's contention, we discern no reason to disturb the hearing court's credibility determinations, including the factual finding that Jeter tacitly consented to the police entering the apartment where the warrantless arrest of the defendant took place. Under this Court's well-settled precedents, such consent is sufficient to negate the defendant's claim of a Payton violation (see People v Xochimitl, 147 AD3d 793, 794, affd 32 NY3d 1026; People v Bunce, 141 AD3d 536; People v Berrios, 295 AD2d 357; People v Russo, 243 AD2d 658; People v Wells, 143 AD2d 708; People v Schof, 136 AD2d 578; People v Keenan, 91 AD2d 1049).
Under normal circumstances, that would be the end of the matter. We are mindful, however, that in a recent, factually similar case, the Court of Appeals—after noting that the hearing court's finding of voluntary consent presented a mixed question of law and fact that was supported by the record and, therefore, was beyond the Court's power of review—took pains to point out that the defendant in that case "did not contend below and does not contend on this appeal that his arrest was unlawful because the police went to his home with the intent of making a warrantless arrest" (People v Xochimitl, 32 NY3d at 1027 [emphasis added]). Here, by contrast, the defendant specifically raised this legal argument before the hearing court, as well as before this Court. Thus, the legal issue that was left open in Xochimitl is squarely presented here.
In fact, the defendant's appellate counsel specifically contends that where the police, armed with probable cause and ample time to obtain an arrest warrant, nevertheless choose to make a warrantless arrest in the absence of exigent circumstances, their conduct must be deemed to violate the defendant's indelible right to counsel under the New York State Constitution (see People v Harris, 77 NY2d at 440).
While this issue presents what appears to be an important constitutional question of first impression, we see no viable path to resolving this question in the defendant's favor within the current framework of New York law. Although the hearing evidence fully supports the defendant's view that the police went to the subject residence with the intent of making a warrantless arrest—indeed, the People did not present any evidence to suggest any alternative motive for the early morning visit—New York law does not presently recognize a "new category of Payton violations based on subjective police intent" (People v Garvin, 30 NY3d at 188; cf. People v Xochimitl, 32 NY3d at 1027; People v Harris, 77 NY2d 434). Therefore, we decline to find that the police conduct in this case amounted to a violation of the defendant's constitutional rights under Payton and/or Harris.
Moreover, since the hearing court's supportable finding of voluntary consent negates the defendant's Payton claim, we need not consider the defendant's further contention regarding the causal link between the warrantless arrest and his subsequent statements to the police.
Remaining Contentions
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish that the victim's death was a reasonably foreseeable consequence of the defendant's conduct, as required for the convictions of murder in the second degree (see Penal Law § 125.25[3]; People v Davis, 28 NY3d 294). Moreover, upon our independent review pursuant to CPL 470.15(5), we are satisfied that the verdict of guilt as to those crimes was not against the weight of the evidence (see People v [*4]Romero, 7 NY3d 633).
While the trial court should have refrained from repeatedly prompting the prosecutor to make objections during the cross-examination of prosecution witnesses, disparaging defense counsel in the presence of the jury for making objections during the People's direct examination, and advising the People, during a sidebar, on how to refresh the recollection of an uncooperative prosecution witness, the trial court's actions were not so egregious as to deprive the defendant of a fair trial (see People v Alexander, 190 AD2d 1052).
The defendant's remaining contentions, including those raised in his pro se supplemental brief, are without merit.
Accordingly, the judgment is affirmed.
DILLON, J.P., COHEN and DUFFY, JJ., concur.
ORDERED that the judgment is affirmed.
ENTER: Aprilanne Agostino Clerk of the Court